UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JIM YOUNG, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:12-CV-364 JD CAN ) |
| FORTIS PLASTICS, LLC and MONOMOY CAPITAL PARTNERS L.P., | ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

This matter is now before the Court on Defendant Monomoy Capital Partners L.P.'s ("Monomoy") Motion to Dismiss Plaintiff Jim Young's ("Mr. Young") First Amended Class Action Complaint. The procedural history of the case was set out in the Court's Opinion and Order granting in part Mr. Young's Motion for Class Certification. Relevant to this decision, on January 25, 2013, Monomoy moved to dismiss Mr. Young's Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 35, 36.] Monomoy argues that Mr. Young's Amended Complaint fails to allege sufficient facts to state a plausible claim that Monomoy was Mr. Young's employer and, therefore, his claims against Monomoy must fail. Mr. Young filed a Memorandum in Opposition, [DE 39], and Monomoy filed a Reply in Further Support, [DE 40].

## I. FACTS

In ruling on Monomoy's Motion to Dismiss, the Court limits its consideration to facts contained in Mr. Young's First Amended Class Action Complaint, except as specifically noted:[1]

---

[1] To the extent the Court considered matters outside the Amended Complaint for purposes of deciding Mr. Young's Motion for Class Certification, it does not consider or rely on those facts in ruling on this Motion to Dismiss.

Mr. Young's claim arises from the closing of a plastics component manufacturing facility which had been located in Fort Smith, Arkansas (the "Fort Smith Facility"). At the time of its closing on October 31, 2011, the Fort Smith Facility employed approximately 91 individuals, including Mr. Young. [DE 22 ¶¶ 6, 29.] The employees had been provided notice of the closing approximately ten days before the facility stopped operation. [DE 22 ¶ 33.] Mr. Young alleges that the notice did not comply with the requirements of the WARN Act and, therefore, he and the other former employees are due back wages and benefits. [DE 22 ¶ 32–35.]

At primary issue in Monomoy's Motion to Dismiss are Mr. Young's allegations that both Fortis and Monomoy constituted a "single employer" of the approximately 91 individuals who worked at the Fort Smith Facility. In support of that claim, Mr. Young makes a number of allegations regarding the interrelatedness of Fortis and Monomoy. Those allegations can be broadly categorized into two groups: allegations regarding the companies generally and allegations regarding the joint decision to terminate Mr. Young and the other employees at the Fort Smith Facility.

Generally, Mr. Young alleges that Fortis was a limited liability company, with its headquarters in South Bend, Indiana, that maintained and operated a number of plastics manufacturing facilities, including the Fort Smith Facility. [DE 22 ¶ 8.] Monomoy is a private equity firm based in New York and was the sole owner of Fortis. [DE 22 ¶¶ 9, 12(b).][2] Mr. Young alleged that Monomoy "maintained a continuous presence at the Fort Smith Facility in connection with its conducting business," [DE 22 ¶ 9], that Monomoy and Fortis "shared

---

[2] In his Memorandum in Opposition, Mr. Young invites the Court to take judicial notice of information contained on Fortis's and Monomoy's respective websites regarding the relationship between Fortis and Monomoy. [DE 39 at 6 n.2.] Monomoy objects to this as an attempt by Mr. Young to amend his complaint through new factual assertions in his brief. [DE 40 at 3.] A party responding to a motion to dismiss "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" as long as the new evidence is consistent with the pleadings. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Accordingly, because this evidence is consistent with Mr. Young's complaint the Court will consider this evidence. However, the Court notes that whether or not the Court considers the evidence would not affect the Court's ruling on the motion to dismiss.

2

common officers, executives, and directors," [DE 22 ¶ 12(a)], and that they had "a unity of personnel policies emanating from a common source," [DE 22 ¶ 12(e)]. Monomoy partners, including Stephen Presser, Mayank Singh, and David Kreilein, engaged in at least weekly calls with Fortis management concerning the operation, financial condition, and management of the Fort Smith Facility. [DE 22 ¶ 13(a).] Additionally, Fortis also annually paid Monomoy $500,000 in management fees. [DE 22 ¶ 13(b).]

With respect to the decision to close the Fort Smith Facility, Mr. Young alleges that the closing was "ordered by Defendants [defined as both Fortis and Monomoy]." [DE 22 ¶ 1.] Mr. Young also alleged that "Monomoy and Fortis exercised de facto control over the labor practices governing Plaintiff and the Class members, including the decision to order the plant closing at the Fort Smith Facility," [DE 22 ¶ 12(d)], and that "Fortis and Monomoy jointly made the labor decisions concerning Plaintiff's employment, including the decision to terminate his employment," [DE 22 ¶ 12(g)]. Finally, Mr. Young alleges that "Monomoy deploy[ed] its partners and other personnel to supervise the management of the Fort Smith Facility, including overseeing personnel decisions and the ultimate decision to close the Fort Smith Facility." [DE 22 ¶ 13(c).]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint when it fails to set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must decide whether the complaint satisfies the "notice-pleading" standard. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). The notice-pleading standard requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to

3

provide "fair notice" of the claim and its basis. *Id.* (citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In determining the sufficiency of a claim, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (internal citations omitted).

The Supreme Court has adopted a two-pronged approach when considering a Rule 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Id.* This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Second, if well-pleaded factual allegations are present in the complaint, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 667. The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (internal citations omitted). A plaintiff's claim, however, need only be plausible, not probable. *Indep. Trust Corp.*, 665 F.3d at 934 (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* In order to satisfy the

4

plausibility standard, a plaintiff's complaint must supply "enough facts to raise a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). Factual allegations, however, "that are merely consistent with a defendant's liability . . . stop short of the line between possibility and plausibility of entitlement to relief." *Id.* at 677–78.

### III. ANALYSIS

Monomoy moves to dismiss the sole count of Mr. Young's First Amended Class Action Complaint, which alleges a violation of the WARN Act. The WARN Act seeks to protect workers who suffer job losses due to mass layoffs by requiring that certain employers provide sixty days-notice to workers before engaging in a mass layoff or plant closing, as those terms are defined by the statute. 29 U.S.C. § 2102(a). If an employer fails to give notice as required under the WARN Act, any aggrieved employee has the right to sue the employer for back pay and benefits. 29 U.S.C. § 2104.

It is not at issue in Monomoy's motion to dismiss whether Mr. Young and the other class members were actually terminated or whether they received proper notice under the WARN Act. Rather, Monomoy argues that Mr. Young's allegations that Fortis and Monomoy constituted his "single employer" are insufficient to state a plausible claim for relief.

In this case, it was Fortis that directly employed Mr. Young. By its own terms, the WARN Act only applies to an "employer." 21 U.S.C. § 2102(a). The statute defines employer as "any business enterprise" that employs the requisite number of employees. 29 U.S.C. §

5

2101(a)(1). However, many courts have extended WARN Act liability to certain affiliated companies other than a direct employer if certain conditions are met. Both parties argue in their briefs that the proper standard for the Court to apply in assessing Monomoy's potential WARN Act liability is a multi-factor test arising from regulations promulgated by the Department of Labor ("DOL") at 20 C.F.R. § 639.3. The applicability of those factors in the context of determining WARN Act liability appears to be an issue of first impression in this District. Accordingly, as an initial matter, the Court examines whether those factors should be applied in deciding Monomoy's Motion to Dismiss.

**A.      Applicability of DOL Factors**

In assessing the applicability of an agency's interpretation of a federal statute, the Court applies the two-prong test articulated in *Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc.* 467 U.S. 837 (1984). First, the Court must determine whether Congress "has directly spoken to the precise question at issue." *Id.* at 842. If Congress has spoken on an issue, the Court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If Congress has not spoken on a specific issue, then the Court defers to any reasonable agency interpretation. *Id.* at 843. In doing so, the Court must defer to the agency interpretation if it is "a permissible construction of the statute." *Id.* The Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n.11.

Here the WARN Act defines an employer as "any business enterprise" that employs a requisite number of employees. 29 U.S.C. § 2101(a). The statute does not define "business enterprise." Further, the legislative history contains no discussion of whether Congress intended

a closely-related entity to be included in the definition of employer. H.R. Rep. No. 100-576, at 1046 (1988) (Conf. Rep.), *reprinted in* 1988 U.S.C.C.A.N. 2078, 2079. Given Congress's silence on this issue, the Court proceeds to determine the reasonableness of the DOL's interpretation of the WARN Act.

The DOL regulations state, in part:

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(2).

Giving the deference due to the DOL's interpretation, as required by *Chevron*, the Court finds that the DOL's interpretation is reasonable. *See Castro v. Chicago Housing Auth.*, 360 F.3d 721, 729 (7th Cir. 2004) (finding DOL interpretation of WARN Act reasonable regarding application to quasi-public entities); *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1005–07 (9th Cir. 2004) (applying DOL interpretation regarding affiliated company liability); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 491 (3d Cir. 2001) (same). Due to the nature of mass layoffs and plant closing, it will often be the case that a direct employer is suffering financial hardship and may not be solvent enough to pay its obligations under the WARN Act. Where a closely related entity exists and was partially responsible for the decisions leading to WARN Act liability, it is reasonable to require it to assume certain of those obligations, which is what the DOL has done with its interpretation.

In further support of applying the DOL factors to determine Monomoy's potential liability, the Court notes that the Seventh Circuit has applied other similar DOL regulations,

7

though to a different issue under the WARN Act. *Castro*, 360 F.3d at 729 (applying DOL regulation to determine whether quasi-public entity constituted employer under the WARN Act). Additionally, there seems to be a growing national consensus among federal courts that the DOL factors should be used to determine an affiliated company's liability under the WARN Act. *Childress*, 357 F.3d at 1005–07 (affirming district court's application of DOL factors in granting summary judgment on issue of "single employer" status); *Pearson*, 247 F.3d at 491 (affirming district court's grant of summary judgment against lender liability through application of DOL factors); *In re Great Atl. & Pac. Tea Co.*, 467 B.R. 44, 54 (S.D.N.Y. 2012) (collecting cases applying DOL factors to determine affiliated corporate liability); *Blair v. Infineion Technologies AG*, 720 F. Supp. 2d 462, 473–74 (D. Del. 2010) (applying DOL factors in denying motion to dismiss claim that employer and affiliated corporation constituted "single employer"); *Austen v. Catterton Partners V, LP*, 709 F. Supp. 2d 168, 173–78 (D. Conn. 2010) (same); *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 141–45 (S.D.N.Y. 2004) (same). Finally, both parties here agree that the DOL factors are the test that should be used to determine whether Mr. Young's complaint states a claim against Monomoy. [DE 36 at 6; DE 39 at 4.]

Therefore, the Court finds the DOL's interpretation of the WARN Act is reasonable and should be used as the legal standard against which the adequacy of Mr. Young's complaint is judged.

**B.     Allegations Regarding DOL Factors**

The numerated factors are not elements that need each be proved, but rather are components of a balancing test that the Court weighs to determine whether Monomoy should be held liable for any failure to provide notice under the WARN Act. *Vogt*, 318 F. Supp. 2d at 142. Accordingly, the Court now looks to Mr. Young's factual allegations relevant to each of the

DOL factors to determine whether, on the whole, Mr. Young's claim is sufficient to overcome Monomoy's Motion to Dismiss.

1. *Common Ownership*

The first DOL factor is common ownership. "While a finding of common ownership 'counts in favor of liability for [the parent],' such a finding 'is of limited significance to the inquiry at hand, since it is well established that stock ownership alone is not grounds for holding a parent liable for its subsidiary's actions." *Austen*, 709 F. Supp. 2d at 174 (quoting *Vogt*, 318 F. Supp. 2d at 141).

Monomoy argues that Mr. Young failed to provide any factual information to substantiate his claim of common ownership between Monomoy and Fortis. [DE 36 at 7.] However, Mr. Young made several factual allegations regarding common ownership. Mr. Young alleged that Monomoy was the sole owner of Fortis. [DE 22 ¶ 9.] Additionally, Mr. Young alleged, on information and belief, that "Fortis is a wholly owned subsidiary of Monomoy" and that "Fortis and Monomoy directly or indirectly owned the Fort Smith Facility." [DE 22 ¶ 12(b)–(c).] These sorts of factual allegations are sufficient to allege common ownership.

2. *Common Directors and/or Officers*

The second DOL factor is that the two companies share common directors and/or officers. This factor "ordinarily looks to whether the two nominally separate corporations: (1) actually have the same people occupying officer or director positions with both companies, (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company." *Pearson*, 247 F.3d at 498. Again, this factor is of limited importance, since the Supreme Court has noted "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary. . . . Since courts generally presume that the directors are

9

wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, it cannot be enough to establish liability . . . that dual officers and directors made policy decisions and supervised activities at the [subsidiary]." *Vogt*, 318 F. Supp. 2d at 142 (alterations in original) (quoting *United States v. Bestfoods*, 524 U.S. 51, 69–70 (1998)).

Again, Monomoy contends that Mr. Young lacks any factual basis for his allegation. [DE 36 at 8.] Mr. Young's sole allegation related to this factor is "[o]n information and belief, Defendants shared common officers, executives, and directors." [DE 22 ¶ 12(a).] Here, Monomoy is correct. Mr. Young's allegation is nothing more than a threadbare recital of the DOL factor and the allegation is not entitled to a presumption of truth. Accordingly, Mr. Young has not sufficiently alleged common directors and/or officers.

3. *De Facto Exercise of Control*

The third DOL factor is that the affiliated company exercised de facto control over the operations of the company at issue. This is "perhaps the most important prong of the DOL test." *Austen*, 709 F. Supp. 2d at 177. Here, the Court looks to whether the affiliated company "was the decisionmaker responsible for the employment practice giving rise to the litigation." *Pearson*, 247 F.3d at 504. "Further, because the balancing of the factors is not a mechanical exercise, if the de facto exercise of control was particularly striking . . . then liability might be warranted even in the absence of the other factors." *Id.*

Here, Mr. Young makes a number of specific allegations related to whether Monomoy exercised de facto control over Fortis. He alleges the closing of the Fort Smith Facility was "ordered by Defendants," which Mr. Young had defined collectively as Fortis and Monomoy. [DE 22 ¶ 1.] He also alleged that "Monomoy maintained a continuous presence at the Fort Smith Facility in connection with its conducting business through its de facto control of Fortis and the

10

Fort Smith Facility" and that "Monomoy and Fortis exercised de facto control over the labor practices governing Plaintiff and the Class members, including the decision to order the plant closing at the Fort Smith Facility." [DE 22 ¶¶ 9, 12(d).] Mr. Young further alleged "[o]n information and belief, Fortis and Monomoy jointly made the labor decisions concerning Plaintiff's employment, including the decision to terminate his employment." [DE 22 ¶ 12(g).] He even alleged the names of specific Monomoy employees involved in the exercise of control, alleging there were "[a]t least weekly calls between Monomoy partners, including Stephen Presser, Mayank Singh, and David Kreilein and Fortis management concerning the operation, financial condition, and management of Fortis." [DE 22 ¶ 13(a).] Finally Mr. Young alleged that Fortis paid Monomoy $500,000.00 per year in management fees and that Monomoy "deploy[ed] its partners and other personnel to supervise the management of the Fort Smith Facility, including overseeing personnel decisions and the ultimate decision to close the Fort Smith Facility." [DE 22 ¶ 13(b)–(c).]

These allegations strike directly to the heart of the issue of Monomoy's liability—whether or not Monomoy controlled the decision to close the Fort Smith Facility. While Monomoy no doubt denies that it did so, Mr. Young's allegations are sufficient at this stage of review to establish that it did exercise de facto control over Fortis.

    4. *Unity of Personnel Policies Emanating from a Common Source*

The fourth DOL factor is that that the companies have a unity of personnel policies emanating from a common source. This prong is analogous to a determination of whether the companies had a centralized control of labor operations and considers factors such as "centralized hiring and firing, payment of wages, maintenance of personnel records, benefits and

11

participation in collective bargaining." *Austen*, 709 F. Supp. 2d at 175 (citing *Vogt*, 318 F. Supp. 2d at 142–43).

Here, Mr. Young alleges "[o]n information and belief, there was a unity of personnel policies emanating from a common source between Defendants." [DE 22 ¶ 12(e).] With respect to this factor, the Court agrees with Monomoy that Mr. Young's allegation is a mere threadbare recital which is not entitled to a presumption of truth. Accordingly, Mr. Young has not sufficiently alleged a unity of personnel policies emanating from a common source.

### 5. *Dependency of Operations*

The final DOL factor is that the companies have a dependency of operations. Dependency of operations can include "sharing of administrative or purchasing services, interchanges of employees or equipment, or commingled finances." *Vogt*, 318 F. Supp. 2d at 143. In determining dependency of operations, "the mere fact that the subsidiary's chain-of-command ultimately results in the top officers of the subsidiary reporting to the parent corporation does not establish the kind of day-to-day control necessary to establish an interrelation of operations." *Pearson*, 247 F.3d at 501.

The only allegation made by Mr. Young in support of a dependency of operations between Fortis and Monomoy is that "[o]n information and belief, there was a dependency of operations between Defendants." [DE 22 ¶ 12(f).] Again, this allegation is a mere threadbare recital and is not entitled to a presumption of truth.

## C. Totality of the DOL Factors

Considering the five factors of the DOL balancing test, Mr. Young has made sufficient allegations of common ownership between Fortis and Monomoy and that Monomoy exercised de facto control over Fortis, including regarding the decision to close the Fort Smith Facility. Mr.

Young's remaining allegations—regarding common officers and directors, unity of personnel policies emanating from a common source, and dependency of operations—were mere conclusory statements to which the Court affords no presumption of truth.

This is a close case, but when each factor is balanced according to its relative weight, Mr. Young's allegations regarding the status of Fortis and Monomoy as the "single employer" of Mr. Young and the other class members are sufficient to survive Monomoy's Motion to Dismiss. On the issue of highest importance—the decision to close the Fort Smith Facility—Mr. Young made a number of clear factual allegations regarding Monomoy's involvement and exercise of control over Fortis. As was noted in *Pearson*, if sufficiently egregious, de facto exercise of control can be sufficient to warrant liability on its own. *Pearson*, 247 F.3d at 496.

At this stage of the proceedings, the Court does not seek to weigh the evidence, but rather decide only if Mr. Young provided Monomoy fair notice of Mr. Young's claim. The Court believes the First Amended Class Action Complaint does just that. Further, the Court believes Mr. Young has put forward enough facts to "raise a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556. If discovery does not yield such evidence, the claims against Monomoy may be well suited for disposition on summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Monomoy's motion to dismiss. [DE 35.]

<mark>13</mark>

SO ORDERED.

ENTERED: September 24, 2013

                 /s/ JON E. DEGUILIO
                 Judge
                 United States District Court